**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Jennifer Hollowell,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **VW Credit, Inc. d/b/a Audi Financial Services,** <br><br> **Defendant.** | **Civil Action No.** |

## COMPLAINT AND JURY DEMAND

### Preliminary Statement

1. This is an action for damages brought by an individual consumer against the Defendant (named below) for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA").

### Jurisdiction and Venue

2. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. §§ 1331 and 1337.

3. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

### Parties

4. Plaintiff Jennifer Hollowell ("Plaintiff" or "Ms. Hollowell") is an adult individual who resides in Narberth, Pennsylvania.

5. Defendant VW Credit, Inc. d/b/a Audi Financial Services ("VW Credit" or

"Defendant") is a business entity that regularly conducts business in the Eastern District of Pennsylvania, including by financing and leasing vehicles to consumers through automobile dealerships located in this district, with a principal place of business located at 1401 Franklin Boulevard, Libertyville, IL 60048.

6. At all times pertinent hereto, VW Credit regularly furnished information regarding consumers, including Plaintiff, to the national consumer reporting agencies Trans Union, LLC ("Trans Union"), Experian Information Solutions, Inc. ("Experian") and Equifax Information Services, LLC ("Equifax") (collectively, the "CRAs").[1]

**Facts**

**Purpose of the FCRA**

7. Understanding the dire consequences of inaccurate credit reporting, Congress enacted the FCRA. One of the primary purposes of the FCRA is to require CRAs to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

8. The preservation of one's good name and reputation is also a foundational principle of the FCRA:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual

[1] Audi Financial Services is a trade name under which VW Credit provides financing and leasing for Audi vehicles. VW Credit furnished the information relating to the lease of the Vehicle to the CRAs under the names "Volkswagen Credit Inc" and "VW Credit Inc."

> is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

Bryant v. TRW, Inc., 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)].

9. To further these objectives, the FCRA imposes duties not only on CRAs, but also on the persons and entities that furnish information to CRAs ("furnishers"). Once a furnisher receives notice from a CRA that a consumer disputes the completeness or accuracy of information the furnisher has provided, the furnisher must, among other things: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the CRA; (C) report the results of the investigation to the CRA; (D) if the information is found to be inaccurate or incomplete, report those results to all other nationwide CRAs to which it furnished the information; and (E) if the disputed information is found to be inaccurate or incomplete or cannot be verified, promptly modify, delete, or permanently block the reporting of that information. See 15 U.S.C. § 1681s-2(b)(1)(A)–(E). The furnisher must complete these steps within the same 30-day period within which the CRA must complete its reinvestigation. See 15 U.S.C. § 1681s-2(b)(2); 15 U.S.C. § 1681i(a)(1).

10. The investigation a furnisher conducts in response to a consumer's dispute must be a reasonable one, and a furnisher may be liable not only for reporting information that is patently false, but also for reporting information that is incomplete or misleading. See SimmsParris v. Countrywide Fin. Corp., 652 F.3d 355, 358–59 (3d Cir. 2011); Seamans v. Temple Univ., 744

F.3d 853, 864–67 (3d Cir. 2014).

11. Here, despite Ms. Hollowell's numerous disputes, each of which was forwarded to VW Credit by the CRAs, VW Credit failed to conduct reasonable investigations of the inaccurate reporting of Plaintiff's credit information and continued to report derogatory, inaccurate information about her to the CRAs.

**The Inaccurate VW Credit Account**

12. Ms. Hollowell takes significant pride in her credit and had excellent credit prior to the inaccurate credit reporting of the VW Credit account (the "VW Account"), discussed further below.

13. Ms. Hollowell leased a 2021 Audi Q5 (the "Vehicle") through Audi Wynnewood, a car dealership located in Wynnewood, Pennsylvania.

14. The lease was arranged through Audi Wynnewood and was held and serviced by VW Credit, which does business as Audi Financial Services. VW Credit collected Ms. Hollowell's monthly lease payments throughout the term of the lease.

15. Ms. Hollowell made every monthly lease payment on time. Indeed, VW Credit's own reporting to the CRAs reflects that the VW Account was "never late."

16. On or about May 16, 2024, at the end of the lease term, the Vehicle was returned to Audi Wynnewood.

17. Audi Wynnewood then purchased the Vehicle and paid off the VW Account, with no other amount owed by Ms. Hollowell. VW Credit's own reporting reflects that it received a payment on the VW Account on May 16, 2024, the very day the Vehicle was returned to and purchased by Audi Wynnewood.

18. Any end-of-lease charges relating to the Vehicle were addressed and paid through

Audi Wynnewood as part of that transaction.

19. The purchase of off-lease vehicles by car dealerships is a common practice. This is because these types of automobiles are often well-maintained and often are attractive options for car buyers.

20. Not long thereafter, Ms. Hollowell received correspondence from VW Credit, under its Audi Financial Services name, stating that she owed a debt of $1,861.48 relating to the lease of the Vehicle.

21. This debt was inaccurate, false and misleading as no debt was owed when the Vehicle was returned, which was confirmed by Audi Wynnewood when the Vehicle was returned.

22. VW Credit nonetheless referred the alleged debt to third-party debt collectors. By way of example, MRS BPO, LLC sent Ms. Hollowell a collection letter dated October 5, 2024, seeking to collect $1,861.48 that she purportedly owed to Audi Financial Services, and Afni, Inc. sent Ms. Hollowell a collection letter dated August 8, 2025, seeking to collect the same $1,861.48.

23. VW Credit also furnished information relating to the alleged debt to the CRAs. Specifically, VW Credit reported the VW Account as charged off, with a balance and past-due amount of $1,861 and a charge-off amount of $1,861. This negative information was inaccurate, false and misleading.

24. VW Credit's reporting was also internally inconsistent and misleading on its face: VW Credit simultaneously reported that the VW Account was "never late" but was charged off with a balance owed.

25. After Ms. Hollowell contacted Audi Wynnewood about the alleged debt, Audi Wynnewood continued to reaffirm that Ms. Hollowell owed nothing since the Vehicle was purchased by the car dealership.

26. In fact, Deborah ("Debbie") Lessin ("Ms. Lessin"), the salesperson from Audi Wynnewood involved with the return and purchase of the Vehicle, wrote the following via text message (the "Lessin Text Messages"):

> I could not let this sit even on my day off. I called my manager who spoke to the used car manager. *Your car was paid off in full May 16*. I am awaiting the paperwork to prove that. At that point, you need to call Audi, and you can get them that paperwork as proof. I don't know how they screwed this up. But this is on Audi's end, not Audi Wynnewood.
>
> I apologize for the angst and inconvenience.

(Emphasis added.)

27. On July 23, 2024, Ms. Lessin had documents sent confirming that Audi Wynnewood purchased the Vehicle and that there were no outstanding obligations relating to the Vehicle. Those documents included a Purchase Options and Purchase Confirmation Notice.

28. These documents further confirmed that Ms. Hollowell owed no further amount relating to the Vehicle. Had any amount been owed, she would simply have paid it at the time the Vehicle was returned.

29. Ms. Hollowell disputed the inaccurately reported VW Account with each of the CRAs numerous times, and despite her efforts, VW Credit repeatedly verified to the CRAs that the derogatory reporting was accurate.

**Ms. Hollowell's Disputes and VW Credit's Receipt of Notice**

30. Under the FCRA, when a CRA receives a consumer's dispute, the CRA must, within five business days, notify the furnisher of the disputed information of the dispute. That notice must include all relevant information regarding the dispute that the CRA has received from the consumer, and the CRA must promptly provide the furnisher with any additional relevant information the consumer provides while the reinvestigation is pending.

31. The CRAs commonly provide this notice to furnishers through an electronic system known as e-OSCAR, by means of an Automated Consumer Dispute Verification form ("ACDV"), through which the CRAs can also transmit the documents the consumer submitted in support of the dispute.

32. In approximately September 2024, Ms. Hollowell submitted disputes to Trans Union, Experian and Equifax explaining that the derogatory information relating to the VW Account was not accurate because the VW Account had been paid off when Audi Wynnewood purchased the Vehicle, and nothing was owed.

33. Pursuant to 15 U.S.C. § 1681i(a)(2), each of the CRAs was required to notify VW Credit of Ms. Hollowell's dispute and to provide VW Credit with all relevant information regarding the dispute that Ms. Hollowell provided. Upon information and belief, each of the CRAs did so, and VW Credit thereby received notice of Ms. Hollowell's disputes.

34. Upon information and belief, VW Credit responded to each of the CRAs by verifying the derogatory information as accurate. Rather than correcting or deleting the derogatory information, VW Credit continued to report the VW Account as charged off with a balance and past-due amount of $1,861.

35. By correspondence dated October 14, 2024, Experian informed Ms. Hollowell of the results of its reinvestigation, which reflected that the derogatory information relating to the VW Account remained. By correspondence dated October 15, 2024, both Trans Union and Equifax informed Ms. Hollowell that the disputed information relating to the VW Account had been verified as accurate.

36. Again, on or about February 3, 2025, Ms. Hollowell disputed the inaccurately reported VW Account with each of the CRAs. Ms. Hollowell's dispute included a detailed letter

explaining why the information being reported was inaccurate and included a copy of her driver's license, social security card, the Lessin Text Messages, the Purchase Options and Purchase Confirmation Notice, an email from Audi Wynnewood confirming that they had purchased the Vehicle ("Audi Wynnewood Email") and the contact information for Audi Wynnewood and Ms. Lessin.

37. The FCRA required Trans Union to forward Ms. Hollowell's February 3, 2025 dispute to VW Credit, together with all relevant information she provided, including her detailed letter and supporting documents. Upon information and belief, Trans Union did so, and VW Credit again verified the derogatory information as accurate. By correspondence dated February 28, 2025, Trans Union informed Ms. Hollowell that the derogatory VW Account information had been verified as accurate.

38. On or about February 25, 2025, Ms. Hollowell again disputed the inaccurate VW Account with Experian. Ms. Hollowell again included a detailed letter explaining why the information being reported was inaccurate and included a copy of her driver's license, social security card, the Lessin Text Messages, the Purchase Options and Purchase Confirmation Notice, Audi Wynnewood Email and the contact information for Audi Wynnewood and Ms. Lessin.

39. The FCRA likewise required Experian to forward this dispute to VW Credit, together with Ms. Hollowell's detailed letter and supporting documents. Upon information and belief, Experian did so. Despite receiving documentation demonstrating that the VW Account had been paid off and that nothing was owed, VW Credit again verified the derogatory information and continued to report the VW Account as charged off with a balance and past-due amount of $1,861.

40. By correspondence dated March 18, 2025, Experian informed Ms. Hollowell that

the VW Account information had been verified and remained on her credit report, reported as "Account charged off/Never late. $1,861 written off."

41. Again, on or about March 11, 2025, Ms. Hollowell disputed the inaccurate VW Account with Trans Union. Ms. Hollowell again included a detailed letter explaining why the information being reported was inaccurate and included a copy of her driver's license, social security card, the Lessin Text Messages, the Purchase Options and Purchase Confirmation Notice, Audi Wynnewood Email, and the contact information for Audi Wynnewood and Ms. Lessin.

42. The FCRA again required Trans Union to forward this dispute to VW Credit, together with Ms. Hollowell's detailed letter and supporting documents. Upon information and belief, Trans Union did so, and VW Credit again verified the derogatory information as accurate. By correspondence dated April 9, 2025, Trans Union informed Ms. Hollowell that the derogatory VW Account information had been verified as accurate.

**VW Credit's Failure to Conduct Reasonable Investigations**

43. Each notice of dispute that VW Credit received from the CRAs triggered VW Credit's obligations under 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation of the disputed information.

44. This investigation requirement further illustrates Congress' findings of the importance of accurate consumer credit reporting. Unfortunately, however, when conducting an 'investigation' furnishers often choose speed over accuracy.

45. When responding to ACDVs, furnishers frequently do nothing more than confirm that the identifying information in the ACDV matches their own internal records, and then simply re-report whatever information already appears in those records, without questioning whether those records are accurate or considering the substance of the consumer's dispute and the

documents the consumer provided.

46. In other words, no true investigation is performed. See e.g., Marchisio v. Carrington Mortg. Servs., LLC, 919 F.3d 1288, 1303 (11th Cir. 2019) ("...Defendant made no correction nor any effort to insure that the pertinent databases revealed the existence of the settlement and the fact that no debt was owed by Plaintiffs. Meaning when Plaintiffs took the predictable next step of disputing this debt with the credit reporting agencies, the outcome of the investigation by Defendant's employee was also quite predictable: the employee would incorrectly verify the existence of a continuing debt.")

47. At this stage, without the benefit of what was fully done (if anything) by VW Credit to investigate Ms. Hollowell's disputes, it is still apparent that its conduct was not reasonable.

48. Ms. Hollowell did not owe a debt relating to the Vehicle after it was traded in. The Vehicle was purchased by Audi Wynnewood and she was repeatedly reassured that there was no outstanding debt owed relating to the Vehicle. VW Credit's own reporting reflected that the VW Account had never been late and that a payment was received on May 16, 2024, the day the Vehicle was returned and purchased by Audi Wynnewood. All of this could have been confirmed if any effort was made to review VW Credit's own payoff records or to contact Audi Wynnewood, which, upon information and belief, VW Credit failed to do.

49. Further, VW Credit had access to the Lessin Text Messages, the Purchase Options and Purchase Confirmation Notice, Audi Wynnewood Email and contact information for Audi Wynnewood and Ms. Lessin, all of which Ms. Hollowell provided with her disputes, which the CRAs were required to provide to VW Credit under 15 U.S.C. § 1681i(a)(2), and which VW Credit was required to review under 15 U.S.C. § 1681s-2(b)(1)(B). These documents could have been used to confirm that the VW Account was not being reported accurately. At a minimum, this

information should have led to the conclusion that VW Credit could not verify as accurate the disputed information, which required VW Credit to modify, delete or permanently block the reporting of that information under 15 U.S.C. § 1681s-2(b)(1)(E).

50. Indeed, any reasonable investigation should have resulted in a detailed review of these documents and of VW Credit's own records relating to the payoff of the Vehicle, as well as obtaining any further details from Audi Wynnewood, instead of simply re-reporting the existing derogatory information as accurate.

51. Moreover, upon information and belief, even after receiving Ms. Hollowell's disputes, VW Credit failed to report to the CRAs that the VW Account was disputed by the consumer, rendering its reporting incomplete and misleading.

52. VW Credit either did not engage in any investigation when it was informed of the inaccurate reporting, or (alternatively) did not engage in a reasonable investigation, as such an investigation would have revealed the inaccurate information, which, at minimum, was misleading since Ms. Hollowell was repeatedly reassured that she did not owe any further payment relating to the Vehicle.

53. VW Credit failed to institute or adhere to policies and procedures that could have prevented the reporting of the inaccurate information.

54. VW Credit knew or should have known that its actions violated the FCRA. VW Credit repeatedly verified the inaccurate information even after receiving documentation demonstrating that no debt was owed, and its conduct was in reckless disregard of Ms. Hollowell's rights under the FCRA. Additionally, VW Credit could have taken the steps necessary to bring its agents' actions within compliance of the statute but neglected to do so and failed to adequately review those actions to ensure compliance with said law.

55. Plaintiff's credit reports and file, containing the inaccurate information furnished and verified by VW Credit, have been obtained from the CRAs and have been reviewed by prospective and existing credit grantors and extenders of credit, and the inaccurate information has been a substantial factor in precluding Plaintiff from receiving credit offers and opportunities, known and unknown.

56. By way of example, on March 20, 2025, after VW Credit had received notice of Ms. Hollowell's disputes, Chase again denied Ms. Hollowell's application for a credit card, relying on her Trans Union credit report and again stating that her "credit report reflects charge off(s) or bad debt collection(s)."

57. Likewise, on April 26, 2025, Bank of America denied Ms. Hollowell's application for a credit card, relying on her Experian credit report and citing, among other reasons, "Current or past delinquency, derogatory public record(s), and/or collection account(s)."

58. Following these denials, Ms. Hollowell refrained from applying for additional credit because she reasonably believed that she would again be denied as a result of the inaccurate VW Account.

59. As a result of VW Credit's violations of the law, Ms. Hollowell suffered interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, fear, worry, anxiety, and embarrassment attendant to her disputes and VW Credit's disbelief of her assertions, as well as anxiety when her credit was reviewed by others.

**Count One – Violations of the FCRA, 15 U.S.C. § 1681s-2(b)**
**Plaintiff v. VW Credit**

60. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

61. At all times pertinent hereto, VW Credit was a "person" as that term is defined by 15 U.S.C. § 1681a(b), and a furnisher of information to consumer reporting agencies subject to the duties imposed by 15 U.S.C. § 1681s-2.

62. At all times pertinent hereto, Trans Union, Experian and Equifax were each a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

63. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

64. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

65. VW Credit received notice of Plaintiff's disputes from the CRAs pursuant to 15 U.S.C. § 1681i(a)(2).

66. VW Credit violated 15 U.S.C. § 1681s-2(b) by, among other things: (a) failing to conduct a reasonable investigation with respect to the disputed information; (b) failing to review all relevant information provided by the CRAs; (c) failing to report to the CRAs that the disputed information was inaccurate, incomplete or could not be verified; (d) failing to promptly modify, delete or permanently block the reporting of the inaccurate and unverifiable information; and (e) continuing to report the VW Account without indicating that it was disputed by Plaintiff. VW Credit willfully and negligently violated the FCRA and is liable for damages to Plaintiff pursuant to Sections 1681n and 1681o of the FCRA.

67. The conduct of VW Credit was a direct and proximate cause, as well as a substantial factor, in bringing about the actual damages and harm to Plaintiff that are outlined more fully above and, as a result, VW Credit is liable to Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further

relief, as may be permitted by law.

**JURY TRIAL DEMAND**

68. Plaintiff demands trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment in Plaintiff's favor and damages against Defendant, based on the following requested relief:

a. Actual damages;

b. Statutory damages;

c. Punitive damages;

d. Costs and reasonable attorneys' fees; and

e. Such other relief as may be necessary, just and proper.

**THE KIM LAW FIRM, LLC**

BY: */s/ Richard H. Kim*
Richard Kim, Esquire
1515 Market St., Suite 1200
Philadelphia, PA 19102
Ph. 855-996-6342/Fax 855-235-5855
rkim@thekimlawfirmllc.com

*Attorney for Plaintiff Jennifer Hollowell*

Date: October 5, 2026